In re Interest of Sloane O., a child
under 18 years of age.

State of Nebraska, appellee, v.
Christopher O., appellant.

State of Nebraska, appellee, v.
Sabrina O., appellant.

___ N.W.2d ___

Filed September 25, 2015.    Nos. S-15-012, S-15-074.

1. **Juvenile Courts: Appeal and Error.** An appellate court reviews juvenile cases de novo on the record and reaches its conclusions independently of the juvenile court's findings. When the evidence is in conflict, however, an appellate court may give weight to the fact that the lower court observed the witnesses and accepted one version of the facts over the other.

2. **Rules of the Supreme Court: Appeal and Error.** Neb. Ct. R. App. P. § 2-109(D)(1)(e) (rev. 2014) requires a separate "assignments of error" section stating the assigned errors apart from the arguments in a brief. In the absence of such assignments of error, an appellate court may proceed as though the appellant has failed to file a brief or, alternatively, may examine the proceedings for plain error.

3. **Parental Rights.** The right of parents to maintain custody of their child is a natural right, subject only to the paramount interest which the public has in the protection of the rights of the child.

4. **Due Process.** The concept of due process embodies the notion of fundamental fairness and defies precise definition.

5. **Parental Rights: Due Process: Appeal and Error.** In deciding due process requirements in a particular case, an appellate court must weigh the interest of the parent, the interest of the State, and the risk of erroneous decision given the procedures in use. Due process is flexible and calls for such procedural protections as the particular situation demands.

6. **Child Custody: Parental Rights.** Under the parental preference princi-
ple, a parent's natural right to the custody of his or her child trumps the
interests of strangers to the parent-child relationship and the preferences
of the child.
7. **Constitutional Law: Child Custody: Parental Rights.** Unless it has
been affirmatively shown that a biological or adoptive parent is unfit or
has forfeited his or her right to custody, the U.S. Constitution and sound
public policy protect a parent's right to custody of his or her child.
8. **Constitutional Law: Parental Rights: Presumptions.** Absent circum-
stances which justify terminating a parent's constitutionally protected
right to care for his or her child, due regard for the right requires that
a biological or adoptive parent be presumptively regarded as the proper
guardian for his or her child.
9. **Juvenile Courts: Parental Rights.** The parental preference doctrine is
applicable to an adjudicated child.

Appeals from the Separate Juvenile Court of Douglas
County: Douglas F. Johnson, Judge. Judgment in No. S-15-012
affirmed. Judgment in No. S-15-074 reversed, and cause
remanded for further proceedings.

Christopher O., pro se, in No. S-15-012.

Karen S. Nelson, of Schirber & Wagner, L.L.P., for appellant
in No. S-15-074.

Donald W. Kleine, Douglas County Attorney, Anthony
Clowe, and Kati Kilcoin, Senior Certified Law Student, for
appellee.

Beau G. Finley, of Finley & Kahler Law Firm, P.C., L.L.O.,
guardian ad litem.

Heavican, C.J., Wright, Connolly, McCormack, Miller-
Lerman, and Cassel, JJ.

Heavican, C.J.
## I. INTRODUCTION
The juvenile court adjudicated Sloane O. as a child under
Neb. Rev. Stat. § 43-247(3)(a) (Supp. 2013) with respect
to allegations of abuse and neglect by her biological father,

Christopher O. It also denied a motion for custody filed by Sloane's mother, Sabrina O. Christopher appeals from the order of adjudication. Sabrina appeals from the denial of the motion for custody.

## II. FACTUAL BACKGROUND

Both of the above-entitled appeals arise from the same set of facts. On August 4, 2014, the State filed a petition seeking to adjudicate Sloane as a child under § 43-247(3)(a). That petition alleged that Christopher had used excessive discipline toward Sloane, causing her injury, and that he had failed to provide Sloane with proper parental care, support, and supervision, thus placing Sloane at risk for harm.

Also on August 4, 2014, the State filed an ex parte motion for immediate custody of Sloane. That motion was granted. A hearing was set for August 14. On August 12, counsel was appointed for Christopher and a guardian ad litem was also appointed. Several preadjudication hearings were held, including the one on August 14. Adjudication was set for November 13 and December 17.

At the same time this case was proceeding, a separate probation docket for possession of a controlled substance involving Sloane was continuing. The juvenile court apparently presided over this probation docket as well. Our record does not contain this docket, but there are references to it throughout our record.

On October 9, 2014, Sabrina filed a motion for custody of Sloane. Sabrina alleged that she had been physically separated from Christopher "for some time" and that a complaint for dissolution of marriage had been filed on October 1, 2014. In her motion, Sabrina indicated that she was fit to have custody of Sloane and that custody should be placed with her, while the Department of Health and Human Services (DHHS) should be "reliev[ed] of custody."

The adjudication hearing was held beginning November 13, 2014. Prior to the start of the hearing, the juvenile court held a hearing on Sabrina's motion for custody, with Sabrina

testifying that she was Sloane's mother and expressing her desire and fitness for custody. Also offered at this hearing was Sloane's birth certificate listing Sabrina as Sloane's mother. In her testimony, Sabrina acknowledged the separate docket and indicated that she was willing to comply with it. Following Sabrina's testimony, the juvenile court moved to the adjudication portion of the proceedings.

Sloane was the first witness. She testified that on July 29, 2014, while at home in Ralston, Nebraska, a pill fell out of her pocket. Christopher saw the pill and was able to identify it as Percocet. Sloane testified that after identifying the pill, Christopher hit her on the face with a closed fist and put a pillow over her face. Apparently because he believed the pill belonged to Sloane's grandmother, Christopher then drove Sloane to her grandparents' home in Council Bluffs, Iowa.

While at her grandparents' home, Sloane testified that she asked Christopher what he would do if she killed herself and that he "shrugged his shoulders." Sloane then testified that she pretended to drink a bottle of hand sanitizer. At that point, according to Sloane, Christopher grabbed her by the hair and threw her down on the floor, where he held her down with his hand over her mouth and nose. Sloane testified that her grandfather witnessed this incident. Sloane indicated that both incidents caused her pain and injury. Photographs of various injuries suffered by Sloane were admitted into evidence at the hearing.

After leaving her grandparents' home, Sloane testified that Christopher drove her to the Ralston Police Department. Sloane reported that she informed an officer of what had happened, including her possession of the Percocet pill. Sloane was charged with possession, taken to the Douglas County Youth Center, and eventually released to Christopher's home with an ankle monitor.

Upon arriving at home, Sloane testified that she was chained to the family's couch with a bicycle chain. Sloane testified that this was not the first time she had been chained to the

couch; previous incidents had apparently been witnessed by Sabrina and Sloane's grandparents. On July 30, 2014, Sloane attended her court hearing. Afterward, Sloane was taken to a child advocacy center and interviewed by April Carlson, a DHHS caseworker.

Carlson testified. She indicated that she interviewed Sloane, Christopher, Sabrina, Sloane's brother, Sloane's therapist, and a nurse practitioner who had examined Sloane at the advocacy center. Carlson also indicated that she had reviewed the juvenile intake form from the Douglas County Youth Center and the report from the Ralston Police Department.

Carlson testified that Christopher admitted to her that he had struck Sloane on the face on at least two separate occasions. Carlson stated there were safety concerns with returning Sloane to Christopher's home and that she felt that Sloane would be "unsafe in the care of [Christopher]."

Christopher testified. He stated that he did not strike Sloane at any point after he discovered the pill, but instead drove her to his parents' home to determine the source of the pill. According to Christopher, while at his parents' home, Sloane "said she wanted to kill herself" and screamed something about "getting a knife." Sloane then grabbed the hand sanitizer, "wedged herself between a dresser and a bookshelf, and tried drinking it." Christopher testified that he tried to stop Sloane from drinking the hand sanitizer and that he tried to remove her "out of the corner and out of the situation." Christopher said that he did not slap or punch Sloane. He later clarified that after discovering the pill, he "popped" Sloane in the mouth with two or three of his fingers, leaving no visible mark on her.

Christopher further testified that he did not strike Sloane when struggling over the hand sanitizer, but that he did "wrestl[e] with her" to keep her from harm. Christopher indicated that some of Sloane's injuries were the result of his restraining Sloane when she was trying to drink the hand sanitizer.

On cross-examination, Christopher was confronted with statements he allegedly made to Carlson indicating that he had hit Sloane. Christopher was asked whether he admitted to Carlson that he had secured Sloane with a chain around her ankle and whether he had said that doing so was "okay because [he] had run it by the Council Bluffs Police Department." Christopher denied he made these statements.

Christopher stated on cross-examination that Sloane's injuries might have been caused by a group of girls who had beat her up a few days before the pill incident. Christopher admitted that he had not called the police about the beating because Sloane hid it from him and because he did not know who perpetrated the assault. Christopher indicated that there was a video of the assault on a social media site and that he had told Carlson's supervisor about the incident.

Carlson was then called in rebuttal to testify that Christopher told her during her investigation that he had struck Sloane on the face on two occasions. In addition, Carlson testified that Christopher and Sabrina informed her that they had chained Sloane to the couch and that the Council Bluffs Police Department had allegedly told Christopher that this was appropriate. Finally, Carlson testified that the allegation regarding the beating by other juveniles was something that would have been passed along to her by her supervisor had it been reported, but that Carlson never received such a report.

Following a hearing, the juvenile court entered an order on December 3, 2014, adjudicating Sloane and placing her in the temporary custody of DHHS with placement to exclude the parental home. It is from this order that Christopher appeals.

On December 22, 2014, the juvenile court denied Sabrina's motion for custody. The court's reasoning was somewhat unclear in that it referenced Sloane's ongoing probation docket as a reason for not granting the motion, and it also indicated that Sabrina had failed to intervene and was not a party to the action. It is from this order that Sabrina appeals.

## III. ASSIGNMENTS OF ERROR

On appeal in case No. S-15-012, Christopher, pro se, does not assign any error to the juvenile court.

On appeal in case No. S-15-074, Sabrina assigns, renumbered, restated, and summarized, that the juvenile court erred in (1) concluding that a parent who has no allegations of abuse or neglect must first intervene before filing a motion for custody, (2) denying her motion for custody, (3) adjudicating Sloane despite having not served Sabrina, and (4) adjudicating Sloane when there were no allegations of abuse or neglect against Sabrina.

## IV. STANDARD OF REVIEW

[1] An appellate court reviews juvenile cases de novo on the record and reaches its conclusions independently of the juvenile court's findings. When the evidence is in conflict, however, an appellate court may give weight to the fact that the lower court observed the witnesses and accepted one version of the facts over the other.[1]

## V. ANALYSIS

### 1. Christopher's Appeal in Case No. S-15-012

[2] Christopher's brief assigns no error to the juvenile court, thus violating this court's rules requiring a separate "assignments of error" section stating the assigned errors apart from the arguments in a brief.[2] Accordingly, we may proceed as though Christopher failed to file a brief or, alternatively, may examine the proceeding for plain error.[3] In this case, we have reviewed the record of the adjudication proceedings for plain error. Finding none, we affirm the order of adjudication.

---

[1] *In re Interest of Nicole M.*, 287 Neb. 685, 844 N.W.2d 65 (2014).

[2] Neb. Ct. R. App. P. § 2-109(D)(1)(e) (rev. 2014).

[3] *In re Interest of Jamyia M.*, 281 Neb. 964, 800 N.W.2d 259 (2011).

## 2. Sabrina's Appeal in
### Case No. S-15-074

#### (a) Issues Preserved for Appeal

Sabrina's notice of appeal, filed January 21, 2015, specifically notes that Sabrina is appealing from the December 22, 2014, order of the juvenile court denying her motion for custody. This notice of appeal was timely, and we conclude that Sabrina has timely appealed from the denial of custody order.

But Sabrina has not timely appealed from the juvenile court's adjudication order. As noted, Sabrina's appeal was filed on January 21, 2015, which is more than 30 days from the December 3, 2014, entry of the adjudication order. As such, we have jurisdiction over Sabrina's assignments of error relating to the custody order, but not as to the adjudication order.

#### (b) Motion to Intervene

In her first assignment of error, Sabrina assigns that the juvenile court erred in finding that she had failed to intervene in this action and thus was not a party to this case. Sabrina argues that the definition of "[p]arties" as stated in Neb. Rev. Stat. § 43-245(19) (Cum. Supp. 2014) includes the juvenile and his or her parent and that she is a party because she is Sloane's parent.

In its order, the juvenile court did not explain why it thought Sabrina was required to intervene. But at the hearing on Sabrina's motion, the county argued that intervention was required by this court's decision in *In re Interest of Kiana T.*[4] The county renews this argument on appeal and suggests that Sabrina's reliance on the definition of "parties" from § 43-245(19) is premature, because Sloane had not yet been adjudicated. Meanwhile, the guardian ad litem concedes that there is tension between *In re Interest of Kiana T.* and § 43-245(19) and requests that we clarify that tension.

---

[4] *In re Interest of Kiana T.*, 262 Neb. 60, 628 N.W.2d 242 (2001).

In *In re Interest of Kiana T.*, the child was born with cocaine in her system and the county attorney filed a petition alleging that she was a child under § 43-247(3)(a). During a "detention" hearing, the mother's attorney noted that the "'natural father [was] also present'" and "'would like to be a party to this petition.'"[5] Eventually, a public defender was appointed to represent the putative father, and the putative father was represented by counsel at the adjudication hearing and at the disposition hearing.

The guardian ad litem objected and sought genetic testing to prove that the putative father was in fact the child's biological father (it does not appear that this testing was completed prior to the appeal). The evidence showed that the child's biological mother had not completed an affidavit of identity and that the putative father had refused to sign any paperwork at the time of the child's birth.

On appeal, both the guardian ad litem and the county attorney argued that the putative father should not have been allowed to intervene without following the procedures set forth in Neb. Rev. Stat. §§ 25-328 through 25-330 (Reissue 1995). We agreed and held that the putative father was not entitled to participate in dependency proceedings without properly intervening in the matter.

*In re Interest of Kiana T.* is distinguishable from the appeal before us. The evidence in that case did not establish that the putative father was in fact the child's biological father. He was not listed on the birth certificate, no paternity tests had been conducted, and the child's biological mother did not complete an affidavit of identity naming him as the biological father. Thus, requiring the putative father to file for intervention and prove that he had standing was appropriate under the circumstances.

In this case, however, Sabrina produced a copy of Sloane's birth certificate identifying her as Sloane's mother. Sabrina

---

[5] *Id.* at 62, 628 N.W.2d at 243.

additionally testified that she was Sloane's mother. Under § 43-245(19), Sabrina was a party.

The county's argument that Sabrina's reliance on § 43-245 was premature is without merit. That section defines terms "[f]or purposes of the Nebraska Juvenile Code, unless the context otherwise requires." It would strain the interpretation of the Nebraska Juvenile Code to conclude that a term in the code does not mean what the code says it means simply because a juvenile had not yet been formally adjudicated.

The juvenile court erred to the extent that it concluded Sabrina needed to file a motion to intervene in this case.

### (c) Denial of Motion for Custody

Sabrina also argues that the juvenile court erred when it denied her motion for custody. Sabrina argues that the parental preference doctrine applies, that her due process rights were violated, and that there was insufficient evidence to show that it was in Sloane's best interests to be placed outside of the parental home.

Before addressing the merits of this claim, we recognize that there is some dispute about whether the juvenile court addressed the merits of Sabrina's motion for custody. We find that it did.

At the hearing, the juvenile court noted the intervention issue. But the court also indicated that it could not award custody to Sabrina even if it wished to do so because of the ongoing probation docket—an indication that it at least considered the merits of Sabrina's motion.

Further supporting the conclusion that the juvenile court reached the merits of Sabrina's motion is the fact that the motion was denied. If the juvenile court had made its ultimate determination based upon Sabrina's failure to intervene, the proper disposition of the motion would have been to dismiss it for lack of standing. We conclude that the juvenile court did address the merits of Sabrina's motion.

Sabrina's appeal raises the issue of what persons or entities are eligible to be awarded custody of a child when that child is both (1) under the supervision of probation and under a dispositional order requiring out-of-home placement and (2) subject to an abuse and neglect docket.

When a child is subject to a probation docket, the Office of Probation Administration has placement and care responsibility for the juvenile,[6] but does not have custody of that juvenile. Though not easily discernible from this record, at the time of adjudication, the probation office had the care, responsibility, or supervision of Sloane. But pursuant to the ex parte and temporary detention orders, Sloane was under the custody of DHHS. If the abuse and neglect docket had not existed, Sloane would have remained under her parents' custody even when undergoing treatment on the probation docket. We also note that temporary custody of Sloane and her brother had been awarded to Sabrina by the district court in Sabrina and Christopher's separate divorce action.

The question presented, then, is where custody of Sloane should lie given the abuse and neglect docket. Under this abuse and neglect docket, the juvenile court had authority pursuant to Neb. Rev. Stat. § 43-284 (Cum. Supp. 2014) to leave Sloane's custody with her parents.

[3-5] Indeed, the right of parents to maintain custody of their child is a natural right, subject only to the paramount interest which the public has in the protection of the rights of the child.[7] The concept of due process embodies the notion of fundamental fairness and defies precise definition.[8] In deciding due process requirements in a particular case, we must weigh the interest of the parent, the interest of the State, and the risk of erroneous decision given the procedures in use.[9]

---

[6] Neb. Rev. Stat. § 43-297.01 (Cum. Supp. 2014).

[7] *In re Interest of Brian B. et al.*, 268 Neb. 870, 689 N.W.2d 184 (2004).

[8] *Id.*

[9] *Id.*

Due process is flexible and calls for such procedural protections as the particular situation demands.[10] As Sloane's mother, due process considerations safeguard Sabrina's right to custody of Sloane, subject only to the State's interest in protecting Sloane from harm.

[6-9] Under the parental preference principle, a parent's natural right to the custody of his or her child trumps the interests of strangers, including the State, to the parent-child relationship and the preferences of the child.[11] Therefore, unless it has been affirmatively shown that a biological or adoptive parent is unfit or has forfeited his or her right to custody, the U.S. Constitution and sound public policy protect a parent's right to custody of his or her child.[12] Absent circumstances which justify terminating a parent's constitutionally protected right to care for his or her child, due regard for the right requires that a biological or adoptive parent be presumptively regarded as the proper guardian for his or her child.[13] The doctrine is applicable even to an adjudicated child.[14]

The Office of Probation Administration was not awarded, nor could it have been awarded,[15] custody of Sloane when she was entrusted to its supervision. Nor was the juvenile court required to give DHHS custody of Sloane by virtue of Sloane's adjudication on the abuse and neglect docket.[16] The parental preference doctrine generally protects Sabrina's right to custody of Sloane.[17]

---

[10] *Id.*

[11] See *In re Interest of Lakota Z. & Jacob H.*, 282 Neb. 584, 804 N.W.2d 174 (2011).

[12] See *id.*

[13] *Id.*

[14] See *id.*

[15] See § 43-297.01.

[16] See § 43-284.

[17] See *In re Interest of Lakota Z. & Jacob H., supra* note 11.

On these facts, it was error for the juvenile court to overlook Sabrina's status as Sloane's mother in making its custody determination. Sabrina was, and is, presumed to be the best person to parent Sloane unless and until the State shows otherwise. During the hearing on Sabrina's motion, the State did not present sufficient evidence to meet its burden.

However, the original hearing on Sabrina's motion for custody was held in November 2014. As such, the record before this court does not provide us with the most up-to-date information regarding Sloane. This information is presumably available to the juvenile court and should be considered by that court on remand. We reverse the juvenile court's denial of Sabrina's motion for custody and remand the cause for further proceedings.

In so remanding, we note that Sloane's probation docket does not affect Sabrina's basic right to legal custody over Sloane. But we emphasize that because the Office of Probation Administration has "placement and care responsibility"[18] over Sloane, Sabrina's right to custody is subject to that probation docket.

## VI. CONCLUSION

The decision of the juvenile court in case No. S-15-012 is affirmed. The decision of the juvenile court in case No. S-15-074 is reversed, and the cause remanded for further proceedings.

JUDGMENT IN NO. S-15-012 AFFIRMED.
JUDGMENT IN NO. S-15-074 REVERSED, AND CAUSE
REMANDED FOR FURTHER PROCEEDINGS.

---

[18] § 43-297.01(1).