IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

IN RE INTEREST OF JULIA D.

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

IN RE INTEREST OF JULIA D., A CHILD UNDER 18 YEARS OF AGE.

STATE OF NEBRASKA, APPELLEE,

V.

DIANA S., APPELLANT.

Filed September 6, 2016.    No. A-16-030.

Appeal from the Separate Juvenile Court of Douglas County: DOUGLAS F. JOHNSON, Judge. Affirmed.

Thomas C. Riley, Douglas County Public Defender, and Zoë R. Wade for appellant

Donald W. Kleine, Douglas County Attorney, and Jennifer C. Clark for appellee.

Susanne Dempsey Cook, guardian ad item.

MOORE, Chief Judge, and IRWIN and PIRTLE, Judges.

PIRTLE, Judge.

INTRODUCTION

Diana S. appeals from an order of the separate juvenile court of Douglas County granting an objection to a proposed change of placement for her daughter, Julia D., and striking the permanency objective of reunification and ordering that no further reasonable efforts for reunification be provided to Diana. Based on the reasons that follow, we affirm.

- 1 -

BACKGROUND

Julia was born in December 2014 and was removed from Diana's care upon her discharge from the hospital because the hospital staff was concerned about Diana's mental health and believed that it affected her ability to provide for the child's basic needs. Julia was placed in the custody of the Department of Health and Human Services and placed in a foster home where she has remained since she was three days old.

On December 23, 2014, the State filed a petition to adjudicate Julia alleging that she was homeless or destitute, or without proper support through no fault of Diana. It alleged that Diana had been diagnosed with psychosis and that this mental condition made her unable to provide proper parental care, support and supervision of Julia, and that she was unable to provide safe, stable, and/or appropriate housing, making Julia at risk for harm.

The juvenile court entered an adjudication order on June 18, 2015, finding that Julia was within the meaning of Neb. Rev. Stat. § 43-247(3)(a) (Cum. Supp. 2014) by a preponderance of the evidence and through no fault of her mother. The juvenile court ordered that Julia remain placed outside the parental home.

Amy Hagler, Julia's case worker, tried to identify suitable relatives to take placement of Julia. She identified Patrick and Deloris Collins (the Collinses), who live in Vancouver, Washington, as a potential relative placement for Julia. Deloris is Diana's first cousin. Hagler had to apply for an Interstate Compact on the Placement of Children (ICPC) home study on the Collinses to be completed by the State of Washington before they could be approved for placement of Julia.

A disposition hearing was held on August 13, 2015. A court report and case plan dated August 6, prepared by Hagler, was entered into evidence. Hagler reported that since December 29, 2014, Diana had attended 25 out of 46 supervised visits offered to her. When she did participate in visits, she would frequently refuse redirection from the visitation worker and would end visits early. The case plan noted that as of July 27, 2015, Diana had not participated in visitation since March. The report also stated that since December 2014, Diana has refused to address her "severe and persistent mental illness." It stated that at a team meeting in June 2015, Diana was informed that she needed to address her mental health, but she continues to refuse. The report concluded that overall, Diana's progress has been poor, due to her refusal to address her mental illness and her lack of consistent participation in offered services. Hagler recommended that a concurrent plan of adoption be accepted by the court.

Following the August 13, 2015, disposition hearing, the juvenile court ordered that the permanency objective for Julia was reunification by May 30, 2016 with a concurrent plan of adoption. The court further stated that it found reunification to be highly unlikely based on the evidence.

In September 2015, the Collinses passed initial background checks and the court granted them supervised visits with Julia.

In October 2015, the Collinses were in Nebraska for a week and were visiting with Julia every day for four hours to get to know her. They were expecting to return to Nebraska the following month for further visits. On October 16, 2015, the ICPC home study on the Collinses

was completed and the Collinses were approved for placement of Julia and for adoption. However, the Collinses and Hagler had only received verbal confirmation that the ICPC had been completed and approved. Julia's guardian ad litem (GAL) objected to any liberalized contact between Julia and the Collinses until the written report was received and could be reviewed.

Following an Impact from Infancy Snapshot hearing in October 2015, the juvenile court entered an order stating that Julia was doing well in foster placement and all developmental milestones were being met. It also stated that Hagler recommended that the permanency objective be changed to adoption because Diana's whereabouts were unknown. It also noted that the ICPC report was still pending.

On November 19, 2015, the Department filed a notice of change of placement, stating that the Collinses have participated in the process and completion of the ICPC and it has been approved, and indicating that the Department intended to place Julia in the Collins home on December 30, 2015.

On November 30, 2015, the parties filed a stipulated motion to allow the Collinses to have unsupervised and overnight visits with Julia when they are in Omaha prior to placement on December 30, 2015. The juvenile court granted the motion.

On December 9, 2015, Diana filed a motion asking the court to issue an order allowing Julia to leave Nebraska for an out-of-town visit with the Collinses in Vancouver, Washington from December 18 to December 23, 2015. The court granted the request.

Julia's GAL filed an objection to the proposed change of placement on December 23, 2015. The next day the State filed a motion for termination of Diana's parental rights to Julia.

A hearing was held on December 29, 2015 regarding the GAL's objection to proposed change of placement, in conjunction with a previously scheduled review and permanency planning hearing. In regard to the objection to the change of placement, the GAL offered her report and a copy of the ICPC home study report.

The ICPC report revealed that Deloris has fibromyalgia, which makes her tired, but she stated she had enough energy to parent and meet Julia's needs. She does not take any medication for her condition and said that she has "learned to live through the pain." Deloris reported that she must take at least two days per month to stay in bed and sleep. The home study stated that Deloris and Patrick would need an alternative plan in place for when Deloris is unable to care for Julia due to her fibromyalgia because Patrick travels out of state for work and Deloris cannot predict when her symptoms will flare up. Deloris also reported that she has mental health diagnoses of anxiety, depression, and post-traumatic stress disorder. She does not take any medication to treat her mental health, but reported she has not had any symptoms related to her mental health diagnosis in over 10 years. Deloris also reported that she has a "love-hate" relationship with doctors. In regard to Patrick, the home study indicates that he suffers from sleep apnea, diabetes, thrombosis, and a pulmonary embolism.

The GAL's report stated that Julia continues to do well in foster care and was meeting all the milestones for her age. It stated that although family members were being considered for placement, Diana had stated on several occasions that she was content with her daughter's placement in the foster home. The GAL also noted that Deloris indicated a distrust of doctors in the ICPC and that she quit treatment for her mental health concerns "due to a seeming distrust of

the therapist she chose." The GAL stated that the general consensus of outside professionals that attended an Impact from Infancy meeting was that Julia had been provided an excellent beginning in her foster home, where she is stable, secure, and able to bond. She acknowledged that a foundation had been laid such that with proper grief counseling Julia would not suffer any lasting damage should the court choose to move her. The GAL opined that the best placement for Julia is her current placement, as it is the only home she has ever known, she has bonded with the foster parents, and is thriving.

Hagler testified on behalf of the Department. She had been Julia's case worker since the case began in December 2014. She testified that based on the ICPC home study being approved and Julia's positive visitation with the Collinses, she believed Julia should be transitioned to the the Collins home for adoptive placement. She believed that placement with the Collinses was in Julia's best interests. She testified that she consulted with individuals from Project Harmony, community members who understand attachment and bonding, her supervisor, the foster care specialist, and the GAL prior to making her recommendation. She stated that although Julia did not have a connection initially with the Collinses, she has developed a connection through visitation that has been taking place since September. She testified that Diana was in favor of Julia being placed with the Collinses, but that she also indicated that she was okay with Julia staying with her present foster parents.

On cross-examination, Hagler admitted that at a family team meeting, Deloris stated that her family kept her away from Diana, and that prior to the birth of Julia, there was no ongoing relationship between Diana and Deloris.

In regard to the review and permanency planning hearing, the evidence showed that Julia was doing well in her placement, appeared to be happy, and was developmentally on track for her age and in good health.

A case plan and report, dated December 21, 2015 was entered into evidence. The report reflected that since the disposition hearing on August 13, Diana was referred for supervised visitation on four separate occasions and on each occasion, she was discharged from services for lack of participation. The report stated that several times throughout the case, Diana has been absent or reported that she is leaving the State. At the time of the report, Diana had been missing since September. Hagler stated in the report that she did speak with Diana by telephone in October 2015, and she reported that she was not interested in services.

The December 2015 case plan and report also noted that at the August 13 disposition hearing Diana was ordered to undergo an updated psychological evaluation within 30 days of the order and cooperate fully with medication management and psychiatric consults. Hagler set up a psychological evaluation but Diana did not attend as she was absent again in September. Diana also failed to participate in a psychological evaluation, an IQ test and a parenting assessment that Hagler had set up in March 2015, as she was also missing during the time she was scheduled to attend. Diana did participate in one medication management appointment in August 2015, but that was the only time. The report further stated that Hagler was unable to ascertain if Diana continued to participate in the Friendship House Program, as she had been ordered, due to Diana's absence.

The report stated that Diana had not made progress toward addressing the safety threats/concerns present, that she had been missing since September 2015, and that Diana

- 4 -

contacted Hagler by phone in October 2015 and indicated that she was not interested in participating in services. Hagler recommended that, due to Diana's lack of participation and Julia's need for permanency, no further reasonable efforts be offered to Diana.

Following the hearing, the juvenile court entered an order granting the GAL's objection to the proposed change of placement. The court also struck the permanency objective of reunification by July 30, 2016 and ordered that the permanency objective shall be adoption. It further ordered that no further reasonable efforts for reunification be provided to Diana.

## ASSIGNMENTS OF ERROR

Diana assigns that the juvenile court erred in (1) granting the GAL's objection to a change of placement to the home of Patrick and Deloris Collins, and (2) striking reunification as a concurrent permanency objective and ordering that no further reasonable efforts for reunification were necessary.

## STANDARD OF REVIEW

An appellate court reviews juvenile cases de novo on the record and reaches its conclusions independently of the juvenile court's findings. When the evidence is in conflict, however, an appellate court may give weight to the fact that the lower court observed the witnesses and accepted one version of the facts over the other. *In re Interest of Sloane O.*, 291 Neb. 892, 870 N.W.2d 110 (2015).

## ANALYSIS

*GAL's Objection to Change of Placement.*

Diana first assigns that the juvenile court erred in granting the GAL's objection to a change of placement to the home of Patrick and Deloris Collins. She states that she wants Julia to be placed with a relative, particularly the Collinses, if reunification is not possible. She points out that the Nebraska Juvenile Code clearly expresses a preference for placement with blood relatives. *In re Interest of Karlie D.*, 283 Neb. 581, 811 N.W.2d 214 (2012); Neb. Rev. Stat. § 43-246(5) (Cum. Supp. 2014); Neb. Rev. Stat. § 43-533 (Reissue 2008); Neb. Rev. Stat. § 43-1311 (Reissue 2008). She also contends that federal law establishes a preference for placement of foster children with relatives over non-related caregivers, citing 42 U.S.C. § 671(19).

Diana also argues that as Julia's parent, she has a fundamental liberty interest in the care, custody, and management of her child. See *In re Interest of Enyce J.*, 291 Neb. 965, 870 N.W.2d 413 (2015). However, once a child has been adjudicated under § 43-247(3), the juvenile court ultimately decides where a child should be placed. *In re Interest of Karlie D., supra.* Juvenile courts are accorded broad discretion in determining the placement of an adjudicated child and to serve that child's best interests. *Id.* The foremost purpose and objective of the Nebraska Juvenile Code is to promote and protect the juvenile's best interests, and the code must be construed to assure the rights of all juveniles to care and protection. *Id.*

Julia was placed with her foster parents on December 23, 2014, when she was a few days old, and has remained in their care since then. At the time of the hearing at issue, she was about a year old. The evidence was undisputed that Julia was doing very well in her current placement.

She was well taken care of, healthy, and meeting all the milestones for her age. Although Diana prefers that Julia be placed and potentially adopted by a family member, she indicated that she is content with Julia's placement in foster care. Hagler stated that Diana was agreeable to Julia's placement with the foster parents. The GAL's report also indicated that Diana stated several times that she was content with Julia's placement with the foster parents. The GAL opined that the best placement for Julia was her current placement because it was the only home she has ever known, she has bonded with the foster parents and is thriving.

The only reason for the proposed change of placement was to place Julia with a relative. As Diana contends, the Nebraska Juvenile Code clearly expresses a preference for placement with blood relatives. *In re Interest of Karlie D., supra.* For example, under Neb. Rev. Stat. § 43-246(5), when separation from the juvenile's home is necessary, relatives are to be considered "as a preferred potential placement resource." *Id.* And Neb. Rev. Stat. § 43-533 lists a number of principles to guide the actions of state government and its departments and agencies, one of which, stated in subsection (4), is "to give preference to relatives as a placement resource" when a child cannot remain with his or her parents. That preference is also expressed in the Department's own administrative rules and regulations. *Id.*

Although the Juvenile Code gives preference to relatives, it is important to note that it does not give relatives the right to placement of the child. Julia's best interests was the court's primary concern in determining whether to change her placement. See *In re Interest of Karlie D., supra.* The evidence showed that the Collinses had no relationship with Julia, and were complete strangers to her, before they began having visits in September 2015. Although the visits were going well, they had only been occurring for a few months at the time of the hearing. Further, there was no evidence that the Collinses had any recent or past relationship with Diana, or even any contact with her. There was evidence that over the years Deloris' family kept her away from Diana.

The ICPC report showed that Deloris has some health concerns. Specifically, she suffers from fibromyalgia, which makes her tired and causes her to spend at least two days in bed each month. She claimed to have enough energy to care for Julia however, she had not cared for a small child on a daily basis for some time. The Collinses had only one child, who was 10 years old at the time of the hearing. The ICPC report also noted that Deloris and Patrick would need an alternative plan in place for when Deloris is unable to care for Julia due to her fibromyalgia because Patrick travels out of state for work and Deloris cannot predict when her symptoms will flare up. Deloris also has a history of anxiety, depression, and post-traumatic stress disorder, which she was not treating. The GAL was concerned about Deloris' distrust of doctors and therapists, and what effect that would have on Julia if placed with the Collinses. Patrick has his own share of health issues, namely sleep apnea, diabetes, thrombosis, and a pulmonary embolism.

The juvenile court rightfully exercised its discretion in determining that placing Julia with the Collinses was not in her best interests. After our de novo review of the record, we conclude that the court did not err in granting the GAL's objection to a change in placement, thereby leaving Julia placed with her foster family. Diana's first assignment of error is without merit.

Diana next assigns that the juvenile court erred in striking reunification as a concurrent permanency objective and ordering that no further reasonable efforts for reunification were necessary. She argues that she was not given a reasonable opportunity to comply with her rehabilitation plan before the permanency objective was changed to adoption. Diana's first rehabilitation plan was ordered on August 13, 2015, and the court discontinued reasonable efforts on December 29, 2015.

Julia was placed into the care of the Department due to Diana's mental health issues. The evidence showed that her mental health issues have not been resolved and further, that there has been a lack of progress. In addition, Diana had failed to comply with the rehabilitation plan, has disappeared at various times over the course of the case, and has indicated that she was not interested in participating in services.

The August 6, 2015, case plan and court report indicated that since December 29, 2014, Diana had only attended 25 out of 46 supervised visits offered to her. When she did participate in visits, she would often refuse redirection from the visitation worker and would end visits early. The case plan noted that as of July 27, 2015, Diana had not participated in visitation since March. The report concluded that overall, Diana's progress has been poor, due to her refusal to address her mental illness and her lack of consistent participation in offered services. In October 2015, Hagler recommended that the permanency objective be changed to adoption because Diana's whereabouts were unknown.

The December 21, 2015 case plan and report reflected that since the August disposition hearing, Diana was referred for supervised visitation on four occasions and on each occasion she was discharged from services for lack of participation. The report stated that several times throughout the case, Diana has gone missing or reported that she is leaving the State. At the time of the report, Diana had been missing since September. Hagler noted that Diana had contacted her by telephone in October 2015 and reported that she was not interested in services.

The December 2015 case plan and report also noted that at the August 13 disposition hearing Diana was ordered to undergo an updated psychological evaluation within 30 days of the order and cooperate fully with medication management and psychiatric consults. Diana did not attend the psychological evaluation that Hagler had set up, as she had been absent again in September. Diana did participate in one medication management appointment in August 2015, but that was the only time. Diana also failed to participate in a psychological evaluation, an IQ test and a parenting assessment that Hagler had previously set up in March 2015, as she was also absent during the time those services were set up. The report further stated that Hagler was unable to ascertain if Diana continued to participate in the Friendship House Program, as she had been ordered, due to Diana's absence.

In the December report, Hagler stated that Diana had not made progress toward addressing the safety threats/concerns present and recommended that, due to Diana's lack of participation and Julia's need for permanency, no further reasonable efforts be offered to Diana.

Based on the record before us, we conclude that the juvenile court did not err in striking reunification as a concurrent permanency objective and ordering that no further reasonable efforts for reunification were necessary. Therefore, we find no merit to Diana's second assignment of error.

## CONCLUSION

We conclude that the juvenile court did not err in granting the GAL's objection to the proposed change of placement for Julia, nor did it err in striking the permanency objective of reunification and ordering that no further reasonable efforts for reunification be provided to Diana. Accordingly, the order of the juvenile court is affirmed.

AFFIRMED.