Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
02/23/2018 09:14 AM CST

In re Interest of Lilly S. and Vincent S.,
children under 18 years of age.
State of Nebraska, appellee, v.
Kenny S., appellant.

___ N.W.2d ___

Filed December 1, 2017.    No. S-17-259.

1. **Juvenile Courts: Appeal and Error.** An appellate court reviews juvenile cases de novo on the record and reaches a conclusion independently of the juvenile court's findings. When the evidence is in conflict, an appellate court may give weight to the fact that the juvenile court observed the witnesses and accepted one version of facts over another.

2. **Rules of Evidence: Judicial Notice.** Pursuant to Neb. Rev. Stat. § 27-201(2) (Reissue 2016), a judicially noticed fact must be one not subject to reasonable dispute in that it is either (a) generally known within the territorial jurisdiction of the trial court or (b) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.

3. ____: ____. When neither of the alternative tests prescribed in Neb. Rev. Stat. § 27-201(2) (Reissue 2016) is satisfied, judicial notice of an adjudicative fact is improper.

4. **Rules of Evidence: Judicial Notice: Words and Phrases.** Adjudicative facts within the meaning of Neb. Rev. Stat. § 27-201 (Reissue 2016) are simply the facts developed in a particular case, as distinguished from legislative facts, which are established truths, facts, or pronouncements that do not change from case to case but apply universally. In other words, the adjudicative facts are those to which the law is applied in the process of adjudication.

5. **Judgments: Words and Phrases.** A fact is adjudicative if the fact affects the determination of a controverted issue in litigation.

6. **Judicial Notice.** A judge or court may take judicial notice, whether requested or not, and judicial notice of an adjudicative fact may be taken at any stage of proceedings.

7. **Juvenile Courts: Judicial Notice: Records.** A juvenile court has a right to examine its own records and take judicial notice of its own proceedings and judgment in an interwoven and dependent controversy where the same matters have already been considered and determined.

8. **Judicial Notice.** A trial court cannot take judicial notice of disputed allegations.

9. **Juvenile Courts: Jurisdiction.** To obtain jurisdiction over a juvenile at the adjudication stage, the court's only concern is whether the conditions in which the juvenile presently finds himself or herself fit within the asserted subsection of Neb. Rev. Stat. § 43-247 (Reissue 2016).

10. **Juvenile Courts: Jurisdiction: Parental Rights.** Neb. Rev. Stat. § 43-247(3)(a) (Reissue 2016) outlines the basis for the juvenile court's jurisdiction and grants exclusive jurisdiction over any juvenile who lacks proper parental care by reason of the fault or habits of his or her parent, guardian, or custodian.

11. **Juvenile Courts: Jurisdiction: Proof.** While the State need not prove that a child has actually suffered physical harm to assert jurisdiction under Neb. Rev. Stat. § 43-247(3)(a) (Reissue 2016), Nebraska case law is clear that at a minimum, the State must establish that without intervention, there is a definite risk of future harm.

12. **Parental Rights: Proof.** The State must prove the allegations in a petition for adjudication filed under Neb. Rev. Stat. § 43-247(3)(a) (Reissue 2016) by a preponderance of the evidence.

13. **Parental Rights.** A court need not await certain disaster to come into fruition before taking protective steps in the interest of a minor child.

14. **Constitutional Law: Due Process.** Procedural due process includes notice to the person whose right is affected by the proceeding; reasonable opportunity to refute or defend against the charge or accusation; reasonable opportunity to confront and cross-examine adverse witnesses and present evidence on the charge or accusation; representation by counsel, when such representation is required by the Constitution or statutes; and a hearing before an impartial decisionmaker.

15. **Child Custody: Parental Rights.** Under the parental preference principle, a parent's natural right to the custody of his or her child trumps the interests of strangers, including the State, to the parent-child relationship and the preferences of the child.

16. **Constitutional Law: Public Policy: Child Custody: Parental Rights.** Unless it has been affirmatively shown that a biological or adoptive parent is unfit or has forfeited his or her right to custody, the U.S. Constitution and sound public policy protect a parent's right to custody of his or her child.

17. **Constitutional Law: Parental Rights: Presumptions.** Absent circumstances which justify terminating a parent's constitutionally protected

right to care for his or her child, due regard for the right requires that a biological or adoptive parent be presumptively regarded as the proper guardian for his or her child.

18. **Child Custody: Parental Rights.** The parental preference doctrine, under which a parent's natural right to the custody of his or her child trumps the interests of strangers, is applicable even to an adjudicated child.

19. **Juvenile Courts: Parent and Child: Evidence.** Once there has been the adjudication that a child is a juvenile within meaning of the Nebraska Juvenile Code, the foremost purpose or objective is promotion and protection of the juvenile's best interests, with preservation of the juvenile's familial relationship with his or her parents, where continuation of such parental relationship is proper under the law. To accomplish such a goal and fashion a dispositional remedy beneficial to the juvenile, the juvenile court should have access to the best available evidence which is relevant, reliable, and trustworthy concerning a correct disposition for the juvenile.

20. **Child Custody: Parental Rights.** While it is true that a parent has a natural right to the custody of his or her child, the court is not bound as a matter of law to restore a child to a parent under any and all circumstances.

21. ____: ____. The parent's natural right to the custody of his or her child is limited by the State's power to protect the health and safety of the children.

22. **Child Custody: Parental Rights: Proof.** The best interests of the children must always be considered in determining matters of child custody, and where the parent is shown to be unfit or to have forfeited his or her superior right to custody, the court may place the children in the custody of an unrelated third party.

23. **Juvenile Courts: Parental Rights: Notice.** Neb. Rev. Stat. § 43-267(2) (Reissue 2016) requires that as a party, the parent shall receive notice of a juvenile dispositional hearing. Such notice ensures that the rights of the adjudicated and nonadjudicated parents are recognized.

Appeal from the Separate Juvenile Court of Douglas County: Douglas F. Johnson, Judge. Affirmed in part, and in part vacated and remanded with directions.

Thomas C. Riley, Douglas County Public Defender, and Zoë R. Wade for appellant.

No appearance for appellee.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Kelch, and Funke, JJ.

Kelch, J.

## INTRODUCTION

Kenny S. appeals the adjudication and disposition order of the separate juvenile court of Douglas County. He challenges (1) the sufficiency of the evidence that his children were at risk of harm, (2) the juvenile court's judicial notice of disputed facts and judicial notice of facts within the court's own "knowledge," (3) the constitutionality of Neb. Rev. Stat. § 43-247(5) (Reissue 2016) as currently construed, and (4) the dispositional order entered without notice or a reasonable opportunity to be heard. We conclude that the juvenile court erred in finding sufficient evidence that Kenny's faults or habits placed the children at risk for harm, taking judicial notice of disputed adjudicative facts, and failing to provide notice and a hearing for disposition, but we reject the remainder of Kenny's claims. Accordingly, we affirm in part and in part vacate the court's decision and remand the cause with directions.

## FACTS

Kenny and Ashley S. are the biological parents of Lilly S., born in 2006, and Vincent S., born in 2012.

In November 2016, the State filed a petition alleging that Lilly and Vincent were children within the meaning of § 43-247(3)(a) due to the fault or habits of their parents. Regarding Ashley, the petition alleged that she had continued to allow Kenny to supervise the children despite knowing he "abuses methamphetamines"; that she engages in domestic violence with Kenny and has failed to take steps to address it; that she has failed to provide proper parental care, support, or supervision for the children; and that these circumstances placed the children at risk for harm. As to Kenny, the petition alleged that he "tested positive for methamphetamines and

amphetamines"; that he uses alcohol or controlled substances; that he engages in domestic violence with Ashley and has failed to take steps to address it; that "Ashley" has failed to provide proper parental care, support, or supervision for the children; and that these circumstances placed the children at risk for harm.

Adjudication proceedings were held in February 2017, during which Ashley entered a "plea" admitting the allegation regarding domestic violence and the allegation that the children were at risk for harm. Specifically, she admitted that there had been one incident where Kenny had pushed her and she called the police. Based on Ashley's admission, the juvenile court found a factual basis sufficient to adjudicate the children as to Ashley and proceeded to receive exhibits and hear arguments concerning disposition as to her.

Immediately thereafter, the matter proceeded to adjudication of the allegations against Kenny. The State attempted to elicit evidence regarding Kenny's use of methamphetamine, but was unable to do so because Kenny invoked his Fifth Amendment privilege against self-incrimination. The State's efforts to obtain such testimony from other witnesses were also unsuccessful, as the court sustained various objections.

The guardian ad litem called Ashley to testify regarding the domestic violence allegations. Ashley testified that on November 1, 2016, she and Kenny engaged in an argument which led to her calling the police. She explained that Kenny pushed her out of his way in order to leave the house. Upon cross-examination by Kenny's counsel, Ashley further testified that this was the only time Kenny had "been physical" with her and that their children were not in the home at the time of the altercation.

The juvenile court took the matter under advisement and issued a written adjudication and dispositional order as to Kenny later that day. It determined Lilly and Vincent to be children within the meaning of § 43-247(3)(a) by a preponderance of the evidence.

Specifically, the juvenile court found that Ashley's testimony was credible with respect to her report that there was an incident of domestic violence following an argument that caused her to call the police. The juvenile court continued:

[T]he Court also, upon its own motion, takes judicial notice that just before trial [Ashley] admitted to the same when she entered a plea of admission [that she engages in domestic violence with Kenny and has failed to take steps to address the domestic violence, placing the children at risk of harm]. The Court finds that by taking jurisdiction of that the same factual basis applies to [Kenny]. Any domestic violence, whether the children are present or not, normally occurs more than one time. Although there may be [one] incidence that is suggested the Court finds that the case law is clear that the children do not have to await for [sic] actual harm to occur for the State to intervene[.]

The juvenile court found the allegations of domestic violence to be true and adjudicated the children on those grounds as to Kenny, but dismissed the substance abuse allegations for insufficient evidence. It went on to state that the "matter proceeded to immediate disposition hearing as to [Kenny]." The juvenile court then ordered Kenny to undergo an initial diagnostic interview as well as any further recommended evaluations and to participate in an accredited domestic violence "Batterer's Intervention Program."

Kenny appeals. The State filed notice of its intent to waive filing a brief and participation in oral arguments in this matter. Ashley has not appealed; as such, this appeal pertains to Kenny only.

## ASSIGNMENTS OF ERROR

Kenny assigns that (1) the juvenile court erred in finding sufficient evidence that the children are at risk for harm; (2) the juvenile court erred in taking judicial notice of disputed facts and facts within the court's own personal "knowledge";

(3) § 43-247(5), as it is currently construed, unconstitutionally deprives a parent of his or her procedural due process rights under the U.S. and Nebraska Constitutions; and (4) he was denied due process of law when the juvenile court entered dispositional orders without providing notice or a reasonable opportunity to be heard.

## STANDARD OF REVIEW

[1] An appellate court reviews juvenile cases de novo on the record and reaches a conclusion independently of the juvenile court's findings. *In re Interest of LeVanta S.*, 295 Neb. 151, 887 N.W.2d 502 (2016). When the evidence is in conflict, an appellate court may give weight to the fact that the juvenile court observed the witnesses and accepted one version of facts over another. *Id.*

## ANALYSIS

### JUDICIAL NOTICE OF DISPUTED FACTS AND FACTS WITHIN COURT'S PERSONAL "KNOWLEDGE"

We first address Kenny's claim that the juvenile court erred in taking judicial notice of disputed facts and facts within the court's own personal "knowledge." As noted above, the juvenile court order stated, in part:

[T]he Court also, upon its own motion, takes judicial notice that just before trial [Ashley] admitted to the same when she entered a plea of admission [that she engages in domestic violence with Kenny and has failed to take steps to address the domestic violence, placing the children at risk of harm]. The Court finds that by taking jurisdiction of that the same factual basis applies to [Kenny]. Any domestic violence, whether the children are present or not, normally occurs more than one time. Although there may be [one] incidence that is suggested the Court finds that the case law is clear that the children do not have to await for [sic] actual harm to occur for the State to intervene[.]

Kenny characterizes the juvenile court's statement, "Any domestic violence, whether the children are present or not, normally occurs more than one time," as the court's taking judicial notice of its personal knowledge. However, we do not view it as judicial notice, but, rather, as permissible commentary on the credibility of Ashley's testimony concerning the frequency of domestic violence and her apparent reluctance to testify about the incident which prompted her to contact the police. In this respect, the juvenile court did not err.

Clearly, however, the juvenile court took judicial notice of the factual basis from the "plea of admission" that Ashley entered during her adjudication proceedings and used it as evidence to support the allegations against Kenny in separate proceedings. Kenny argues that because these facts were in dispute, the juvenile court erred. We agree.

[2-5] The Nebraska Evidence Rules control adduction of evidence at an adjudication hearing under the Nebraska Juvenile Code. See *In re Interest of J.S., A.C., and C.S.*, 227 Neb. 251, 417 N.W.2d 147 (1987). See, also, Neb. Rev. Stat. § 43-279(1) (Reissue 2016). Pursuant to Neb. Rev. Stat. § 27-201(2) (Reissue 2016), a judicially noticed fact must be one not subject to reasonable dispute in that it is either (a) generally known within the territorial jurisdiction of the trial court or (b) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. When neither of the alternative tests in § 27-201(2) is satisfied, judicial notice of an adjudicative fact is improper. *State v. Vejvoda*, 231 Neb. 668, 438 N.W.2d 461 (1989). Adjudicative facts within the meaning of § 27-201 are simply the facts developed in a particular case, as distinguished from legislative facts, which are established truths, facts, or pronouncements that do not change from case to case but apply universally. *Strunk v. Chromy-Strunk*, 270 Neb. 917, 708 N.W.2d 821 (2006). In other words, the adjudicative facts are those to which the law is applied in the process of adjudication. *Id.* A fact is adjudicative if the fact affects the

determination of a controverted issue in litigation. *State v. Vejvoda, supra*.

[6,7] A judge or court may take judicial notice, whether requested or not, and judicial notice of an adjudicative fact may be taken at any stage of proceedings. § 27-201(3); *State v. Vejvoda, supra*. And a juvenile court has a right to examine its own records and take judicial notice of its own proceedings and judgment in an interwoven and dependent controversy where the same matters have already been considered and determined. *In re Interest of Ty M. & Devon M.*, 265 Neb. 150, 655 N.W.2d 672 (2003).

The foregoing authority permitted the juvenile court to take judicial notice of the adjudicated fact that it had found Lilly and Vincent, in Ashley's case, to be within the meaning of § 43-247(3)(a) due to domestic violence occurring between Kenny and Ashley. See *Strunk v. Chromy-Strunk, supra*. But here, the juvenile court went a step further and took judicial notice of the factual basis of Ashley's admission, which consisted of adjudicative—not adjudicated—facts, facts which Kenny disputed.

[8] As Kenny points out, we have recognized that under § 27-201(2), "a trial court cannot take judicial notice of disputed allegations." *In re Interest of N.M. and J.M.*, 240 Neb. 690, 698, 484 N.W.2d 77, 82 (1992). And previously addressing judicial notice of adjudicative facts, we quoted 1 Jack B. Weinstein & Margaret A. Berger, Weinstein's Evidence ¶ 201[03] (1988):

"When facts do not possess [the] requisite degree of certainty, our traditional procedure has been to require proof within the framework of the adversary system for reasons well-expressed by Professor Davis: 'The reason we use trial-type procedure, I think, is that we make the practical judgment, on the basis of experience, that taking evidence subject to cross-examination and rebuttal, is the best way to resolve controversies involving disputes of adjudicative facts, that is, facts pertaining to

the parties. . . .' [Quoting from K. Davis, *A System of Judicial Notice Based on Fairness and Convenience*, in Perspectives of Law 69 (1964).]"
*State v. Vejvoda*, 231 Neb. at 676, 438 N.W.2d at 467.

Here, the factual basis provided by the State for Ashley's admission, which is disputed by Kenny, did not "'possess [the] requisite degree of certainty'" that is required for judicial notice, since the veracity of the facts offered was not subject to any test by Kenny at the time of Ashley's admission. See *id.* We conclude that this procedure of judicially noticing adjudicative facts against a parent who challenges those facts, without providing that parent the opportunity to respond to the act of judicial notice, was in error. And we do not consider such facts in evaluating the sufficiency of the evidence.

### SUFFICIENCY OF EVIDENCE
### OF RISK OF HARM

[9-12] Next, Kenny claims that the juvenile court erred in finding sufficient evidence that the children were at risk for harm and therefore came within the meaning of § 43-247(3)(a). To obtain jurisdiction over a juvenile at the adjudication stage, the court's only concern is whether the conditions in which the juvenile presently finds himself or herself fit within the asserted subsection of § 43-247. *In re Interest of Justine J. et al.*, 286 Neb. 250, 835 N.W.2d 674 (2013). "Section 43-247(3)(a) outlines the basis for the juvenile court's jurisdiction and grants exclusive jurisdiction over any juvenile 'who lacks proper parental care by reason of the fault or habits of his or her parent, guardian, or custodian.'" *In re Interest of Justine J. et al.*, 286 Neb. at 253, 835 N.W.2d at 677. While the State need not prove that the child has actually suffered physical harm, Nebraska case law is clear that at a minimum, the State must establish that without intervention, there is a definite risk of future harm. *In re Interest of Justine J. et al., supra*. The State must prove such allegations by a preponderance of the evidence. *Id.*

As to Kenny, the petition alleged, in relevant part, that Lilly and Vincent came within the meaning of § 43-247(3)(a) due to domestic violence between Kenny and Ashley which placed the children at risk for harm. Disregarding the judicially noticed adjudicative facts, the evidence supporting this allegation consisted of Ashley's in-court testimony that Kenny pushed her once while outside the children's presence and the juvenile court's judicial notice of the adjudication of the children as to Ashley, pursuant to § 43-247(3)(a).

[13] As the juvenile court observed, "a court need not await certain disaster to come into fruition before taking protective steps in the interest of a minor child." *In re Interest of S.L.P.*, 230 Neb. 635, 639, 432 N.W.2d 826, 830 (1988). Conceivably, a child need not witness domestic violence or be in the vicinity in order to be placed at risk for harm. For example, if a child observed the subsequent results of domestic violence or was otherwise made aware of the domestic violence, this could constitute a risk for harm to the child. But to support adjudication, this court has required an evidentiary nexus between a parent's fault or habits and the risk for harm to the child. See *In re Interest of Justine J. et al., supra*. Here, without additional evidence of the actual or potential effects of the domestic violence on Lilly and Vincent, there is insufficient evidence in the record to find that they were placed at risk for harm by Kenny's actions. Therefore, we conclude that the juvenile court erred in finding sufficient evidence that the children were at risk for harm due to any faults or habits of Kenny and that it erred in adjudicating the children on that basis.

### Due Process Claims

Finally, Kenny claims that § 43-247(5), as construed by this court, unconstitutionally deprives a "non-adjudicated" parent of his or her procedural due process rights under the U.S. and Nebraska Constitutions. Brief for appellant at 13. Further, Kenny claims that he was denied due process of law when the

juvenile court entered dispositional orders as to him without providing notice or a reasonable opportunity to be heard. We shall address these assignments of error together, since they are intertwined.

In relevant part, § 43-247 provides:

The juvenile court in each county shall have jurisdiction of:

. . . .

(3) [a]ny juvenile (a) . . . who lacks proper parental care by reason of the fault or habits of his or her parent, guardian, or custodian [and]

. . . .

(5) [t]he parent, guardian, or custodian of any juvenile described in this section.

Under our previous interpretations of § 43-247(5), when a child is adjudicated as a child within the meaning of § 43-247(3)(a), a juvenile court can also exercise jurisdiction over a nonadjudicated parent, that is, a parent who did not deprive the child of proper parental care due to his or her faults or habits. See, *In re Interest of Devin W. et al.*, 270 Neb. 640, 707 N.W.2d 758 (2005); *In re Interest of Amber G. et al.*, 250 Neb. 973, 554 N.W.2d 142 (1996). It is this application of § 43-247(5) that Kenny challenges and which we now uphold.

Kenny claims that our previous holdings applying § 43-247(5) to nonadjudicated parents fail to address "the State's burden to show the parent is unfit" and "unfairly deprive[] parent[s] of their fundamental interest in the care and custody of their children without due process of law." Brief for appellant at 13. Notably, Kenny fails to cite any specific legal authority to support his contention that our previous analyses are incorrect.

[14] Instead, Kenny points to two principles. First, he cites our description of procedural due process in the context of a juvenile adjudication:

""""[P]rocedural due process includes notice to the person whose right is affected by the proceeding;

reasonable opportunity to refute or defend against the charge or accusation; reasonable opportunity to confront and cross-examine adverse witnesses and present evidence on the charge or accusation; representation by counsel, when such representation is required by the Constitution or statutes; and a hearing before an impartial decisionmaker.""'"

*In re Interest of Heather R. et al.*, 269 Neb. 653, 659-60, 694 N.W.2d 659, 665 (2005) (quoting *In re Interest of Mainor T. & Estela T.*, 267 Neb. 232, 674 N.W.2d 442 (2004)).

[15-18] Second, Kenny relies on the parental preference principle, under which a parent's natural right to the custody of his or her child trumps the interests of strangers, including the State, to the parentchild relationship and the preferences of the child. See *In re Interest of Sloane O.*, 291 Neb. 892, 870 N.W.2d 110 (2015). Unless it has been affirmatively shown that a biological or adoptive parent is unfit or has forfeited his or her right to custody, the U.S. Constitution and sound public policy protect a parent's right to custody of his or her child. *Id.* Absent circumstances which justify terminating a parent's constitutionally protected right to care for his or her child, due regard for the right requires that a biological or adoptive parent be presumptively regarded as the proper guardian for his or her child. *Id.* The doctrine is applicable even to an adjudicated child. *Id.*

We dealt with a similar claim in *In re Interest of Amber G. et al.*, 250 Neb. 973, 554 N.W.2d 142 (1996), where one parent asserted that the process of waiting until the dispositional hearing to determine placement is unconstitutional as applied to a nonadjudicated parent. In *In re Interest of Amber G. et al.*, we found that despite no allegations against one parent, both parents were subject to the jurisdiction of the juvenile court after an adjudication hearing found the children to be within § 43-247(3)(a). Further, we found that both parents' rights were protected by the two-step process of adjudication and disposition. We stated:

In Nebraska, the rights of the parent and the child are protected by the separate adjudication and dispositional phases of the dependency proceeding. A petition brought under § 43-247(3)(a) is brought on behalf of the child, not to punish the parents. . . . The purpose of the adjudication phase of the proceeding is to protect the interests of the child; the purpose of the dispositional phase is to determine placement and the rights of the parties in the action. . . . It is not improper for the court to sustain jurisdiction at the adjudication phase if the State [establishes a] lack of proper parental care in the child's present living situation.

*Id.* at 980, 554 N.W.2d at 148 (citations omitted).

[19] Kenny asserts that his rights are not protected by waiting until the dispositional phase to address them; however, the adjudication stage represents the initial process whereby the juvenile court determines whether the child is subject to its jurisdiction pursuant to § 43-247. Once there has been the adjudication that a child is a juvenile within meaning of the Nebraska Juvenile Code, the foremost purpose or objective is promotion and protection of the juvenile's best interests, with preservation of the juvenile's familial relationship with his or her parents, where continuation of such parental relationship is proper under the law. *In re Interest of J.S., A.C., and C.S.*, 227 Neb. 251, 262, 417 N.W.2d 147, 155 (1987). To accomplish such a goal and fashion a dispositional remedy beneficial to the juvenile, the juvenile court should have access to the best available evidence which is relevant, reliable, and trustworthy concerning a correct disposition for the juvenile. *Id.*

This in turn leads to Kenny's next contention, which involves the following language from *In re Interest of Amber G. et al.*, 250 Neb. at 984, 554 N.W.2d at 150:

Where there are two parents with separate homes, the children can be removed from the home of the unfit parent at the adjudication hearing without prejudicing the

other parent's right to gain custody of the child at the dispositional hearing *upon a sufficient showing that he or she is capable of providing proper parental care*. (Emphasis supplied.) Kenny argues that "permitting a non-adjudicated parent to gain custody of his or her child 'upon a sufficient showing that he or she is capable of providing proper care'" improperly shifts the burden of proving parental fitness to the parent, thereby relieving the State of its burden of proof. Brief for appellant at 18.

We perceive the contradictory nature of the aforementioned language from *In re Interest of Amber G. et al.*, 250 Neb. 973, 982, 554 N.W.2d 142, 149 (1996), wherein we also stated:

This court has long held that in a child custody controversy between a biological or adoptive parent and one who is neither a biological nor an adoptive parent of the child involved in the controversy, a fit biological or adoptive parent has a superior right to the custody of the child. . . . A court may not properly deprive a biological or adoptive parent of the custody of the minor child unless it is affirmatively shown that such parent is unfit to perform the duties imposed by the relationship or has forfeited that right; neither can a court deprive a parent of the custody of a child merely because the court reasonably believes that some other person could better provide for the child.

(Citation omitted.) To the extent that *In re Interest of Amber G. et al.* places the initial burden on the nonadjudicated parent at a dispositional hearing to show parental fitness, it is disapproved.

[20-22] However, upon a showing at a dispositional hearing by the State or another interested party or a predispositional report that raises concerns about the parental fitness of a nonadjudicated parent, that parent has the burden to rebut such evidence. This is consistent with our precedent that while it is true that a parent has a natural right to the custody of his or her child, the court is not bound as a matter of law to restore a

child to a parent under any and all circumstances. *In re Interest of Amber G. et al., supra.* Instead, the parent's natural right is limited by the State's power to protect the health and safety of the children. *Id.* The best interests of the child must always be considered in determining matters of child custody, and where the parent is shown to be unfit or to have forfeited his or her superior right to custody, the court may place the children in the custody of an unrelated third party. *Id.*

If we accepted Kenny's premise, a child would automatically be placed with the nonadjudicated parent until a hearing could be scheduled, which means that pending the placement hearing, the child would be placed in an unknown situation. We understand that much of the time, placement with the nonadjudicated parent would be appropriate. Unfortunately, however, there are those limited situations where placement with the nonadjudicated parent would cause harm to the child. At the same time, we also understand that the government is not a substitute for parents. But there must be a balancing between the rights of parents and the best interests of the child. See *In re Interest of Cassandra B. & Moira B.*, 290 Neb. 619, 861 N.W.2d 398 (2015). Certainly, Kenny, as a parent, would be the preferred placement for Lilly and Vincent, but without any information about his situation, the juvenile court would have insufficient evidence to fashion a disposition that served the children's best interests. See Neb. Rev. Stat. § 43-283.01 (Reissue 2016).

[23] Finally, we recognize that Neb. Rev. Stat. § 43-267(2) (Reissue 2016) requires that as a party, the parent shall receive notice of the dispositional hearing. Such notice ensures that the rights of the adjudicated and nonadjudicated parents are recognized. Unfortunately, those procedures were not followed in this situation. Kenny was not provided notice of the dispositional hearing and was thereby deprived of the opportunity to address any placement concerns or his parental fitness. Therefore, we vacate the dispositional order of the juvenile court and remand this cause back to that court

for a dispositional hearing for Kenny after proper notice to all parties.

## CONCLUSION

For the foregoing reasons, we affirm in part and in part vacate the juvenile court's decision and remand the cause for further proceedings.

AFFIRMED IN PART, AND IN PART VACATED
AND REMANDED WITH DIRECTIONS.

WRIGHT, J., not participating.